UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-20182-SCOLA

UNITED STATES OF AMERICA

vs.

THOMAS MUNNE,

        **Defendant.**
_____/

**UNITED STATES OF AMERICA'S MOTIONS *IN LIMINE* AND RELATED NOTICES OF INTENT TO INTRODUCE 404(b) AND INEXTRICABLY INTERTWINED EVIDENCE**

    The United States of America ("government"), by and through the undersigned Assistant United States Attorney, hereby moves *in limine* and advises defendant Thomas Munne ("MUNNE") of its intention to introduce evidence of prior crimes, wrongs, or acts, pursuant to Fed. R. Evid. 404(b), in order to establish MUNNE's identity, intent, and motive to commit the crimes charged, and as inextricably intertwined evidence.

    Specifically, the government seeks to introduce evidence that: (i) MUNNE previously partnered with his co-conspirator in this case, "A.M.L.," to traffic marijuana and commit ATM robberies between 2005 and 2015; (ii) MUNNE committed two similar ATM robberies with another individual in 2009-2010 and 2015; (iii) MUNNE distributed marijuana (with victim "N.C." and independently) prior to, during, and after the charged conspiracy; (iv) MUNNE intended to use a portion of the proceeds of the charged robbery to purchase a large amount of cocaine for distribution; and (v) MUNNE committed the charged offenses because MUNNE believed that N.C. stole a distribution-weight amount of marijuana and a watch from MUNNE's residence.

As explained below, this evidence is either admissible to prove MUNNE's identity, intent, and motive to commit the charged crimes under 404(b), or admissible as inextricably intertwined evidence that establishes a prior relationship of trust—which included a prior partnership in other crimes—between MUNNE and co-conspirator A.M.L., and tends to explain their joint participation in the charged offenses. The probative value of this evidence significantly outweighs the prejudicial effect against MUNNE, and any such prejudice can be minimized with a limiting instruction to the jury.

## I.    Factual Background

On or about August 4, 2020, at approximately 3:44 p.m., victim "N.C." was driving a Ford pickup truck in Miramar, Florida, when N.C. noticed red and blue flashing lights coming from the visor of a dark gray sedan (the "Gray Sedan") behind him. Believing there was a legitimate traffic stop underway, N.C. pulled over on the highway.

Two unknown individuals ("Suspect 1" and "Suspect 2," collectively "the Suspects") outfitted in masks and law enforcement clothing (*i.e.*, police hats, police shirts, badges and guns) approached N.C.'s truck. Suspect 1—later identified as A.M.L.—approached the driver's side door, handcuffed N.C. and assaulted N.C. The Suspects then forced N.C. into the back seat of N.C.'s truck and bound N.C.'s legs with zip ties. After threatening N.C. with a firearm, A.M.L. then drove N.C.'s truck to a location in the vicinity of U.S. 27 and Griffin Road. Suspect 2 followed in the Gray Sedan.

Suspect 2, who drove the Gray Sedan, ditched the vehicle and joined A.M.L. and N.C. in N.C.'s truck. The Suspects then drove to N.C.'s residence, located in Miami, Florida. While N.C. remained tied up in the back seat of the truck, both Suspects entered N.C.s residence. One Suspect forcefully detained N.C.'s mother, "A.V.," and took A.V.'s cellular telephone to prevent her from

calling the police, while the other Suspect went to N.C.'s bedroom and removed a safe from the closet. The Suspects executed the scheme methodically and within a matter of minutes despite not knowing N.C. and never having stepped inside his home. Both Suspects then fled in N.C.'s truck with the safe.

The Suspects thereafter drove N.C.'s truck back to the location where they had left the Grey Sedan. Once there, the Suspects forced N.C. to divulge the combination to the safe. The Suspects removed over $200,000 in cash[1] from the safe and exited N.C.'s truck. One of the Suspects gave a handcuff key to N.C. before fleeing with the second Suspect in the Gray Sedan.

Shortly thereafter, N.C. located a GPS tracking device that was magnetically attached to the frame of his truck. Subsequent investigation by law enforcement revealed that the tracking device was purchased on or about August 3, 2020 (just a day before the carjacking/robbery), at a business called Spy Connection USA, located in Miami, Florida. Video surveillance from that business revealed that A.M.L. drove a grey sedan to the location on the date of purchase, and interior video surveillance from the business showed A.M.L. purchasing the tracking device. Law enforcement identified the license plate number of the sedan from the exterior video surveillance, which was registered to a Hertz rental facility at the Miami International Airport ("the Hertz").

Subsequent investigation revealed that MUNNE rented the grey sedan from the Hertz, and that MUNNE rented a hotel room for A.M.L. in Miami, Florida prior to the robbery. Law enforcement also determined that A.M.L. flew from Los Angeles, California to Miami, Florida, on dates that corresponded to the vehicle and hotel rentals, and location data for the phone number

---

[1] It is unknown exactly how much money was removed from the safe, but the investigation revealed that it is between approximately $200,000 and $375,000.

that A.M.L. used to book his flights placed him at locations relevant to the carjacking and robbery of N.C.

On May 4, 2021, A.M.L. was charged in a five-count indictment for conspiracy to commit Hobbs Act robbery (18 U.S.C. § 1951), Hobbs Act robbery (18 U.S.C. §§ 1951 and 2), carjacking (18 U.S.C. §§ 2119(1) and 2) and two counts of brandishing a firearm in furtherance of a crime of violence (18 U.S.C. § 924(c)(1)(A)(ii)). *See* Case No. 21-CR-20274-SMITH. On January 24, 2022, A.M.L. pleaded guilty to Count 3 (carjacking) and Count 5 (brandishing a firearm in furtherance of a crime of violence), and was subsequently sentenced to 214 months' imprisonment.

A.M.L. agreed to cooperate with the government and provided information against MUNNE concerning MUNNE's role in the robbery and carjacking of N.C., as well as MUNNE's prior unrelated criminal history, detailed below.

## II. Prior Uncharged Evidence to be Admitted at Trial

The government intends to offer at trial evidence of MUNNE's prior criminal relationship with A.M.L.; MUNNE's uncharged marijuana distribution operation and corresponding motive to commit the charged offenses; and MUNNE's uncharged ATM robberies.

### a. MUNNE's Prior Relationship with A.M.L.

At trial, the government intends to offer evidence that A.M.L. has known MUNNE for several years and engaged in uncharged criminal conduct with MUNNE dating back to 2005. Specifically, the evidence will show that: (i) A.M.L. and MUNNE used heavy construction equipment to steal approximately fifty (50) automated teller machines ("ATMs") containing nearly $2,500,000 beginning around 2005; and (ii) that A.M.L. and MUNNE transported between 200-250 pounds of marijuana via semi-trucks around 2014-2015.

### b. MUNNE's Uncharged Marijuana Dealing and Motive to Commit Charged Offenses

The government also intends to offer evidence that MUNNE—before and after the charged conspiracy—was a large-scale marijuana and marijuana vape pen distributor and engaged in such activity with N.C. for a period of time. The evidence will also show that after N.C. and MUNNE's marijuana distribution partnership ended, MUNNE believed that N.C. stole approximately $20,000 worth of marijuana vape pens and a Rolex watch from MUNNE's residence. This belief prompted MUNNE to contact A.M.L. in order to form the charged conspiracy—a scheme in which A.M.L. would rob N.C. on MUNNE's behalf as "payback," and then split the proceeds.

Additionally, the government intends to offer evidence at trial establishing that prior to the charged offenses, MUNNE asked A.M.L. to make connections with Mexican cocaine distributors who could supply cocaine to MUNNE for distribution, and that a portion of MUNNE's proceeds from the charged robbery would be used as a down payment to A.M.L.'s connections for such cocaine.

### c. MUNNE's Uncharged ATM Robberies

In addition to introducing evidence of the ATM thefts that MUNNE committed with A.M.L., the government also intends to offer evidence that MUNNE and an individual named Eduardo Clavelo stole ATMs in 2015 and around 2009-2010.

The evidence for those offenses is as follows: on January 29, 2015, an ATM containing $115,000 was stolen from the Regions Bank, located at 8225 Champions Gate Blvd., Davenport, Florida. A forklift was used to remove the ATM from the ground and to place the ATM into a box truck, driven by Eduardo Clavelo ("Clavelo"). A patron at a neighboring 7-Eleven convenience store witnessed the theft and followed the box truck while providing location updates to law

enforcement. Law enforcement stopped the box truck on Highway 27 and arrested the driver, Clavelo. Law enforcement also recovered the ATM from inside of the box truck.

Clavelo waived his *Miranda* rights and provided a statement to law enforcement. In that statement, Clavelo stated that he and MUNNE (Clavelo's "childhood friend"), drove in MUNNE's white Ford F-250 truck from Hialeah, Florida, to Osceola County, Florida, to steal the ATM. Clavelo said that he saw a white box truck at a Publix near the bank, and that he used a screwdriver to punch the ignition of the truck and drive it to the bank. He further stated that MUNNE found a Bobcat forklift at a construction site across the street from the bank with the keys inside. MUNNE used the forklift to lift the ATM from its base and load it into Clavelo's box truck. MUNNE then followed behind Clavelo in his F-250.

Clavelo said that he and MUNNE had stolen another ATM together five to six years prior (in 2009-2010) from a Bank of America on Bird Road, and that the ATM contained approximately $70,000.

    III.    **Evidence of MUNNE's Criminal Partnership with A.M.L., Marijuana Dealing, Motive to Commit the Charged Offenses, and Commission of ATM Robberies is Admissible as Inextricably Intertwined Evidence or Under Fed. R. Evid. 404(b)**

    a.  **Legal Standards**

Rule 404(b) usually governs the admission of evidence of prior bad acts. *United States v. Richardson*, 764 F.2d 1514, 1521 (11th Cir. 1985). Under Rule 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character." The Rule further provides, however, that such evidence may be admitted for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." The Eleventh Circuit has described Rule 404(b) as one "of inclusion" and that "404(b)

evidence, like other relevant evidence, should not be lightly excluded when it is central to the prosecution's case." *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

However, not all evidence of bad acts or wrongs is governed by Rule 404(b). "Evidence of criminal activity other than the offense charged is not extrinsic [and therefore not excludable under Rule 404(b)], provided that the evidence is '(1) an uncharged offense which arose out of the same transaction or series of transactions as the charged offense, (2) necessary to complete the story of the crime, or (3) inextricably intertwined with the evidence regarding the charged offense.'" *United States v. Ellisor*, 522 F.3d 1255, 1269 (11th Cir. 2008) (citing *United States v. Jiminez*, 224 F.3d 1243, 1249 (11th Cir. 2000) (citation omitted)); *United States v. Williford*, 764 F.2d 1493, 1499 (11th Cir. 1985) ("Evidence, not part of the crime charged but pertaining to the chain of events explaining the context, motive and set-up of the crime, is properly admitted if linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury."). Evidence that is inextricably intertwined "tends to corroborate, explain, or provide necessary context for evidence regarding the charged offense." *United States v. Gay*, 423 F. App'x 873, 876 (11th Cir. 2011) (citing *Jiminez*, 224 F.3d at 1249).

Evidence that qualifies as inextricably intertwined with the charged offenses, or that is admissible for a proper non-propensity purpose under Rule 404(b), is not automatically admissible, but must be analyzed under Fed. R. Evid. 403 ("Rule 403") to determine whether "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Exclusion of evidence pursuant to Rule 403 is "an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of admissibility." *United States*

*v. Lopez*, 649 F.3d 1222, 1247 (11th Cir. 2011). The court must "look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Id*. (internal citation and quotation marks omitted).

> b. **A.M.L.'s and MUNNE's Joint Participation in ATM Robberies and Transportation of Marijuana is Inextricably Intertwined with the Charged Offenses**

A.M.L.'s and MUNNE's joint history engaging in numerous ATM robberies and their transportation of multi-hundred-pound loads of marijuana is inextricably intertwined with the charged offenses, as it establishes the relationship of trust between them and explains why MUNNE asked A.M.L. to commit the charged offenses.

In *United States v. Simpkins*, 240 F. App'x 334 (11th Cir. 2007), the defendant and three others were charged with conspiracy to commit armed bank robbery and bank robbery, among other crimes. At trial, the government presented the testimony of a cooperating co-defendant that the defendant was the driver (rather than a gunman) in the charged robbery because he had been a gunman in a prior, uncharged robbery and did not believe he had been paid enough to warrant the danger associated with being the gunman in the charged offense. The Eleventh Circuit affirmed the district court's admission of the evidence because the evidence was inextricably intertwined with the charged conduct, stating, "Here, [the cooperating co-defendant's] testimony about the prior robbery explained why [the defendant] was asked to participate in the charged robbery and why he was the driver of the getaway car." *Id*. at 340.

Similarly, in *United States v. Gougis*, 432 F.3d 735 (7th Cir. 2005), the defendant and three others, all of whom were law enforcement officers, were charged with conspiracy and attempt to possess cocaine with the intent to distribute. At trial, the district court permitted the government to introduce a portion of an audio recording in which the defendant and two of his co-defendants

8

discussed stealing jewelry from a home when executing a search warrant five years prior. In finding the audio recording "intricately related" to the crimes charged, the court held that the recording "tended to explain [the defendant's] participation in the conspiracy and his relationship with two of his three co-conspirators." *Id*. at 742.

The court went on to note that the co-conspirators' "cavalier discussion of [the defendant's prior theft]—committed while he [and two of the co-conspirators] were working together as CHA police officers—demonstrated a longstanding relationship of trust based in part upon previous participation in misconduct in public office." *Id*.; *see also*, *United States v. Wantuch*, 525 F.3d 505, 518 (7th Cir. 2008) (evidence that a defendant illegally sold cigarettes to a co-defendant prior to conspiring to commit immigration fraud was inextricably intertwined with the immigration conspiracy, as it "outlined how the relationship of trust and cooperation between [the co-defendants] was born, developed and eventually led to their respective roles in the conspiracy."); *United States v. Kirkland*, 612 F. App'x 133, 136-37 (3rd Cir. 2015) (evidence that co-conspirators discussed prior burglaries, and plans to commit future burglaries, while incarcerated for racketeering was "intrinsic evidence" probative of the charged residential burglary conspiracy, as it established the relationship between the co-defendants and showed how and why the co-defendants developed their modus operandi for the charged conspiracy).

Here, MUNNE and A.M.L.'s joint commission of marijuana trafficking and approximately fifty (50) ATM robberies is inextricably intertwined with the instant charges because it establishes the existence of a prior relationship between them and explains why MUNNE chose and trusted A.M.L. to participate in the criminal venture. Without such context, MUNNE's decision to trust and enlist the assistance of A.M.L., who lived across the country in Los Angeles, to carjack and rob a victim in South Florida, would be incomprehensible to a jury.

    **c. Evidence of MUNNE's Uncharged Marijuana Dealing and Motivation to Commit the Charged Offenses is Admissible as Inextricably Intertwined Evidence and Under Rule 404(b)**

Evidence that MUNNE: (i) was a large-scale marijuana dealer; (ii) knew that N.C. trafficked marijuana; (iii) believed that N.C. stole $20,000 worth of marijuana vape pens and a Rolex watch from MUNNE's residence; and (iv) intended to use some of the robbery proceeds to fund a narcotics distribution operation with A.M.L.'s Mexican cartel connections, is inextricably intertwined with the charged offenses and also admissible under Rule 404(b). Such evidence establishes how MUNNE knew N.C., why MUNNE believed that N.C. possessed a significant amount of drug proceeds, and why MUNNE targeted N.C. with the charged offenses. That evidence also affirms MUNNE's identity as the source of the information that A.M.L. needed to carry out their robbery conspiracy. MUNNE's prior dealings and interactions with N.C. are what led him to know where N.C. lived, where N.C.'s car would be parked (for tracking purposes), and where N.C. kept his safe. Collectively, the evidence is crucial in relating to the jury not just *who* provided the necessary information to N.C.'s actual assailants, but also *why*.

Rule 404(b) expressly authorizes the admission of evidence of uncharged criminal activity if it "pertain[s] to the chain of events explaining the context, motive, and set-up of the crime [and is] linked in time and circumstances with the charged crime, or forms an integral and natural part of the account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Lehder-Rivas*, 955 F.2d 1510, 1515-16 (11th Cir. 1992) (quoting *United States v. Van Dorn*, 925 F.2d 1331, 1338 (11th Cir. 1991)). Accordingly, evidence that MUNNE orchestrated the carjacking and robbery of N.C. as "payback" for N.C.'s theft of marijuana pens and a watch from MUNNE's residence is admissible under 404(b), as it is linked with the circumstances of the

charged crime, forms an integral and natural part of the account of the crime, and explains the motive and set-up of the charged offenses.

Additionally, evidence establishing MUNNE's prior marijuana trafficking and familiarity with N.C. as a competing marijuana distributor is intrinsic to the proof of the conspiracy. MUNNE's lengthy involvement as a marijuana trafficker establishes MUNNE's capacity to expand his narcotics trafficking operation through A.M.L.'s Mexican cartel connections and corroborates A.M.L.'s expected testimony. *See generally*, *United States v. Cardenas*, 895 F.2d 1338, 1344 (evidence of prior drug dealings is highly probative of conspiracy to distribute controlled substances). But more importantly, MUNNE's knowledge of N.C.'s illicit marijuana distribution activities—due, in part, to MUNNE and N.C.'s prior partnership in the trade—explains how MUNNE knew that N.C. had a significant amount of cash on hand, and explains *why*, given the likelihood that N.C. could identify him based on their familiarity, MUNNE brought A.M.L. into the conspiracy. *See Lehder-Rivas*, 955 F.2d at 1516 (evidence of pre-conspiracy drug offenses pertained to the "chain of events forming the context, motive and set-up for the crime.").

### d. Evidence of MUNNE's Uncharged ATM Robberies is Admissible to Prove Intent under Rule 404(b)

MUNNE's commission of prior ATM robberies with Eduardo Clavelo and A.M.L. is admissible to prove his intent to commit the charged robbery. As the Eleventh Circuit noted, "when a defendant charged with conspiracy enters a not guilty plea, he makes intent a material issue in the case and imposes a substantial burden on the government." *Cardenas*, 895 F.2d at 1342. Accordingly, "[o]ne factor to consider in determining whether the evidence of prior acts is admissible to prove intent is whether it appeared at the commencement of trial that intent would be a contested issue." *Id*. "[T]he government may introduce extrinsic offenses which qualify under

404(b) to prove defendant's state of mind, unless defendant takes affirmative steps to remove the issue of intent from the case." *Id*.

In this case, MUNNE has entered a not guilty plea and is exercising his right to have the government prove his guilt beyond a reasonable doubt at trial. Because MUNNE has not removed the issue of intent from the case, the government expects it to be a contested issue.

Evidence of prior offenses to prove intent is admissible if two requirements are fulfilled: (1) it must be determined that the extrinsic offense requires the same intent as the charged offense; and (2) the jury could find that the defendant committed the extrinsic offense. *Id*. at 1343 (quoting *United States v. Beechum*, 582 F.2d 898, 913 (5th Cir. 1978)).

The evidence to be admitted at trial is that MUNNE and A.M.L. committed approximately fifty (50) ATM robberies together beginning in 2005, and that MUNNE committed two ATM robberies with Clavelo in 2009-2010 and 2015. The intent required to commit an ATM robbery is the same intent required to commit a Hobbs Act robbery; specifically, both criminal statutes—Title 18, United States Code, Section 2113 (ATM robbery), and Title 18, United States Code, Section 1951 (Hobbs Act robbery)—require proof that the defendant "knowingly" obtained property. *See* Eleventh Circuit Pattern Jury Instructions 076.1 and 070.3 (2020).

The government expects that MUNNE's commission of those prior offenses will be established through the testimony of A.M.L., a law enforcement officer involved in the 2015 ATM robbery investigation, and Clavelo himself. Proof in the form of witness testimony has been deemed sufficient for a jury to conclude that an event occurred. *See Cardenas*, 895 F.2d at 1343 (testimony of two witnesses sufficient for jury to conclude that defendant committed extrinsic offense).

Thus, because intent will likely be contested at trial, and because the government can prove MUNNE's commission of prior offenses involving the same criminal intent as the charged offenses, MUNNE's commission of prior ATM robberies with A.M.L. and Clavelo is admissible under 404(b).

### IV. The Probative Value of MUNNE's Prior Bad Act Evidence Outweighs Any Prejudicial Effect

As stated above, evidence deemed preliminarily admissible under Rule 404(b) or as inextricably intertwined with the charged offenses must nevertheless be analyzed under Rule 403 to determine whether its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403. The Eleventh Circuit has explained "that the Rule 403 calculus favor[s] admissibility," and the "time span between [the defendant's] prior convictions and the present offense does not render those convictions 'too remote for proper consideration.'" *Jernigan*, 341 F.3d at 1282 (quoting *United States v. Calderon*, 127 F.3d 1314, 1332 (11th Cir. 1997)).

#### a. MUNNE's 2005, 2009-2010 and 2015 Offenses Are Not Too Remote to be Excludable

The Eighth Circuit has held that "inquiry regarding the remoteness of a prior conviction is fact specific, and the answer to how long is too long depends on the theory that makes the evidence admissible." *United States v. Meija-Uribe*, 75 F.3d 395, 398 (8th Cir. 1996). The Eleventh Circuit has routinely held that convictions as old as fifteen years are not too remote to have probative value. *See United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995); *United States v. Sterling*, 738 F.3d 228, 239 (11th Cir. 2013); *see also United States v. Strong*, 415 F.3d 902, 905 (8th Cir. 2005) (16-year old convictions of first-degree robbery and felon in possession of a firearm not too

remote in trial involving felon in possession of a firearm); *United States v. Halk*, 634 F.3d 482, 487 (8th Cir. 2011) (19-year old conviction for armed criminal conduct not too remote in trial involving felon in possession of a firearm due to defendant's incarceration for 11.5 years).

Here, MUNNE's commission of ATM robberies with A.M.L. beginning in 2005 and ATM robberies with Clavelo in 2009-2010 and 2015 occurred at or within fifteen years prior of the charged offenses, which were committed in August 2020. Additionally, MUNNE's marijuana distribution operation existed during the timeframe immediately preceding the charged offenses, during the charged conspiracy, and continued after the conspiracy ended.

Such evidence is being introduced (i) to establish the MUNNE's relationship and trust with A.M.L., the individual who MUNNE enlisted to actually commit the substantive offenses; (ii) to explain MUNNE and A.M.L.'s roles in the charged conspiracy; and (iii) to prove MUNNE's identity, intent, and motive to commit the charged offenses.

While a 15-year-old conviction used to establish a defendant's intent to possess a firearm, for example, may render the conviction of limited probative value, the probative value of evidence establishing that the familiarity, trust, and relationship between co-conspirators that resulted in their joint commission of numerous ATM robberies and the transportation of distribution quantities of controlled substances is qualitatively different, as is evidence establishing a strong motive to commit the charged offenses.

### b. MUNNE's Prior Offenses and Charged Conduct Are Similar

As noted in *Jernigan*, courts should consider the similarity between the prior bad act evidence and the charged conduct when assessing the former's admissibility under Rule 403, and favor evidence that is sufficiently similar. *Jernigan*, 341 F.3d at 1282.

In both the instant offenses and MUNNE's prior ATM robberies, MUNNE knowingly took property belonging to another by force. And MUNNE's prior narcotics trafficking, which he conducted both as a partner of N.C. and as a competitor of N.C., establishes MUNNE's familiarity with N.C.'s finances, N.C.'s possession of significant amounts of cash, and the location where the robbery would ultimately take place (N.C.'s house). It also establishes that the information came from MUNNE (who knew N.C.), and that he relayed it to A.M.L. (who did not know N.C.) to execute the scheme.

### c. The Evidence is Not Unduly Prejudicial

The crux of Rule 403 is to preclude prior bad act evidence that is of such limited probative value, and so prejudicial, that the jury will be persuaded to convict a defendant based on conduct for which the defendant is not on trial. Though it is inarguable that any evidence of criminality is inherently prejudicial, the test is not simply whether MUNNE would be prejudiced by the admission of evidence against him, but whether the danger of unfair prejudice *substantially* outweighs the probative value of the evidence.

In this case, the prejudice against MUNNE is minimal due to the ease with which jurors can distinguish between MUNNE's prior bad acts and the charges he is facing at trial. MUNNE's ATM robberies between 2005 and 2015 are distinguishable from the present 2020 charges, which include a carjacking and home invasion Hobbs Act robbery, and MUNNE's drug dealing. Moreover, MUNNE, by pleading not guilty to all charges in the indictment, has placed his intent at issue. Evidence that MUNNE and A.M.L. had a lengthy history of joint criminal ventures is highly probative to explain why MUNNE trusted A.M.L. enough to bring him in to the charged conspiracy, and evidence that MUNNE concocted this criminal scheme to right a perceived injustice perpetrated by N.C. establishes MUNNE's motive to commit the crimes charged.

Any potential prejudice resulting from the admission of such evidence can be mitigated with a limiting instruction from the Court requiring the jury to only consider the evidence for the limited, non-propensity purposes for which it was introduced. *See United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1225 (11th Cir. 1993); *Perry v. Johnson*, 532 U.S. 782, 799 (2001).

**V.      Conclusion**

For the foregoing reasons, the United States respectfully requests that the Court allow it to introduce evidence that: (i) MUNNE partnered with "A.M.L." to traffic marijuana and commit ATM robberies between 2005 and 2015; (ii) MUNNE committed two similar ATM robberies with another individual in 2009-2010 and 2015; (iii) MUNNE distributed marijuana (with victim "N.C." and independently) prior to, during, and after the charged conspiracy; (iv) MUNNE intended to use a portion of the proceeds of the charged robbery to purchase a large amount of cocaine for distribution; and (v) MUNNE committed the charged offenses because MUNNE believed that N.C. stole a distribution-weight amount of marijuana and a watch from MUNNE's residence.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:     /s/ *Shane Butland*
Shane Butland
Assistant United States Attorney
Court ID No. A5502525
U.S. Attorney's Office
99 N.E. 4th Street
Miami, FL 33132-2111
Telephone: (305) 961-9123
shane.butland@usdoj.gov

Eduardo Gardea, Jr.
Assistant United States Attorney

Court ID No. A5502663
U.S. Attorney's Office
99 N.E. 4th Street
Miami, FL 33132-2111
Telephone: (305) 961-9339
eduardo.gardea.jr@usdoj.gov

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on September 21, 2022.

                                          /s/ *Shane Butland*
                                          Shane Butland
                                          Assistant United States Attorney